HOWARD (COBB v.). See Cases Nos. 2,-924 and 2,925.

HOWARD (COOK v.). See Case No. 3,160.

## Case No. 6,757.

### HOWARD v. CRAWFORD COUNTY.

[1 Pittsb. Rep. 531; 6 Pittsb. Leg. J. 454.]

Circuit Court, W. D. Pennsylvania. May Term, 1859.

COUNTY BONDS IN AID OF RAILWAYS — VALIDITY OF SUBSCRIPTION—UNAUTHORIZED CONDITIONS —SIGNATURES OF COUNTY COMMISSIONERS.

[1. Under a statute authorizing a county to subscribe for railroad stock upon the recommendation of a grand jury (Acts Pa. April 21, 1846, and May 4, 1852), the fact that the decision of the grand jury in favor of such a subscription is submitted to a vote of the people can in no wise affect the validity of the subscription, whatever the result of the vote, since the submission is wholly unauthorized.]

[2. Where a subscription by a county to railroad stock was made upon a condition not authorized by the law under which the subscription was made, and such condition was omitted from the bonds issued by the county, held, that one who received the bonds in payment for work done in good faith in constructing the road was entitled to recover upon them, whether he had notice of the condition or not.]

[3. The fact that railway aid- bonds are signed by only two of the three county commissioners does not affect their validity, as the signatures of two, with the corporate seal, are sufficient.]

This was an action [by George W. Howard against Crawford county] to recover interest due on bonds of defendant, issued to the Pittsburgh and Erie Railroad Company, and by them transferred to plaintiff.

The case was opened on behalf of plaintiff, by Mr. J. W. Farrelly, of Meadville, who stated that in 1846 an act was passed incorporating the Pittsburgh and Erie Railroad Company, authorizing the construction of a railroad from the city of Pittsburgh to the city of Erie, in the state of Pennsylvania. In 1852 another act was passed, conferring power upon the counties of Erie, Crawford, Mercer and Lawrence to subscribe to the stock of said railroad company, and providing that said subscriptions should be made upon the recommendation of a grand jury, who should fix the amount, designate the terms, &c., and that said subscription should

be made upon no other conditions. In August, 1853, the grand jury of Crawford county recommended a subscription of $200,000 to the stock of said company. In a few days after, the county commissioners held a meeting, and subscribed $200,000, the amount recommended by the grand jury. By the terms of the subscription the county was to have four directors in the road, and in order to have said directors appointed, the commissioners executed a single bond for the whole amount of subscription. Subsequently that bond was cancelled, and lithographed bonds were issued, ranging from one hundred to one thousand dollars each, having twenty years to run—the coupons to be paid semiannually. A fly-leaf was attached to the bonds, containing the act of assembly authorizing the subscription, the recommendation of the grand jury, and the subscription of the commissioners, to show that the bonds were good and perfect, and issued in accordance with the law of the state. The work was put under contract, and the plaintiff, as a contractor, commenced work, and continued to work upon the road for about a year. By their agreement he was to receive $150,000 in county bonds, $400,000 in the company's stock, and $300,000 in cash, from the company. He expended $60,000 in the work. He received in bonds $12,000, in cash the sum of $2,000, and perhaps $3,000 in the stock of the company. He was obliged to suspend the work for want of means; and now suit is brought upon the coupons attached to bonds paid him, at par, by the said railroad company. The amount due him as interest exceeds $2,000.

Mr. Pettis opened the case for defendant, going into a lengthy history of the various transactions connected with the subscription by Crawford county, the connection of the plaintiff with the company, &c. The case in behalf of the county rests upon alleged irregularity in the issue of the bonds, and also upon the question of fraud. The whole issue of $200,000, it is alleged, was obtained by fraud and misrepresentation, upon the part of the company and its agents.

A large amount of testimony was given in the shape of depositions.

Shaler, Stanton & Farrelly, for plaintiff.
N. P. Fetterman and Mr. Pettis, for defendant.

McCANDLESS, District Judge. This action is instituted by George W. Howard upon coupons, detached from bonds of Crawford county, of which he is the holder. In the aggregate, they amount to $2,163. The multiplicity of matters presented, and the seeming confusion in which you must have received them, requires that the court should undergo some labor in making them intelligible to the jury.

The legislature of Pennsylvania, by an act passed the 21st of April, 1846, authorized

the incorporation of a company to build a railroad, beginning at, and uniting with the western terminus of the Baltimore and Ohio Railroad, if such road shall be constructed in the county of Allegheny, but if said railroad shall not terminate there, then to begin at some point in the city of Pittsburgh in the county of Allegheny, thence by such direct and practicable route, &c., and terminating in the town of Erie, in the county of Erie, &c. This act, although passed by the legislature, and approved by the governor, owing to the non-payment of the enrolment tax, does not appear in the published laws until 1850. The wisdom and policy of the act, is evident, from the termini indicated; and its execution was no doubt suspended by a different action of the Baltimore and Ohio Company, fixing a terminus upon the Ohio, further south, and probably a want of sufficient enterprise and means to complete the road. At that date the modern discovery of appropriating the whole property of the people to pay the debts of a corporation, had not occurred; and the simple old way of paying for what you subscribed was then fashionable. Consequently, the act slept upon the statute books, until about the period of the war connected with the "chimney top," an era prolific of suits in this court. Erie county and its citizens manfully resisted the encroachments of New York on the one side, and of Ohio on the other, and claimed that their patrimony should remain intact, whatever might be the demands of commerce, or the personal convenience of the citizens of the different states.

In 1852 a supplement was passed to this act, doubtless originating with the sound substantial freeholders of Crawford county, with the hope of passing the immense traffic from east to west, and vice versa, through their territory, instead of Erie. Whether or not, or for the purposes of speculation, it is the law of the land, and it is the function of this court to give it a proper interpretation.

The plaintiff has presented a clear case, unless it is rebutted by something offered by the defendant. He has shown you the bond and coupons—that he is a meritorious creditor; that he has labored for the corporation from whom he received those bonds; and that labor, if it did not inure, was intended to inure to the benefit of Crawford county. The citizens of the county saw him commence the work with eclat; saw him pursue it until he had expended upwards of $60,000, and would have canonized him, if the result had made Meadville a center of trade, or other than a mere inland town. Relying on the public faith and credit of the county, he took these bonds; and this was one resource from which he expected to reimburse himself and pay his hands. The whole project failing, and particularly this lateral branch, that was to consummate so much, the commissioners of Crawford county now seek to repudiate—not the principal of the bonds, for which they admit they are liable, but the interest, upon the pretext that there was some irregularity in the issue of the bonds, and that there was fraud, to which the plaintiff was a party. The first is for the court, the latter is for you.

Whenever there is any evidence of fraud, however slight, it is the duty of the court to submit it to you. We are compelled to say, after a careful review of all the testimony offered, that there is nothing to implicate the plaintiff in any act of fraud or misrepresentation; and that he might properly repel the accusation by charging an attempt to commit it, upon his adversaries. This, then, disposes of the only question of fact upon which you will have to pass; and upon the court must rest the responsibility of deciding upon the legality of the subscription, and the liability of the defendant.

We accordingly charge you:

1. That although we cannot agree with the supreme court of Pennsylvania, that the act of the grand jury was invalid, by reason of the repeal of the Gauge law; yet, that their recommendation of the 11th day of August, 1853, was a literal and substantial compliance with the act of assembly of the 4th day of May, 1852. Their authority "to advise and recommend," was not exhausted in the first instance.

2. The submission to a vote of the people, however much it may have been designed to relieve the grand jury from responsibility was unauthorized, and whichever way it may have resulted could not alter the effect of their advice and recommendation to subscribe, submitted to the court of Crawford county.

3. The condition incorporated with the subscription, was wholly unauthorized by the act of the 4th of May, 1852. It may be operative in an action between the county and the corporation; but as to the plaintiff, whether he had notice of it or not, it is not binding upon him, and is a fraud upon him and all others, who have in good faith received the bonds of the county. The very asterisks, or dots, which have been made the subject of so much comment, indicated that the commissioners, themselves, intended to omit a condition, which without impairing their liability if inserted, would have rendered their bonds unsaleable in the market. If it were otherwise, they cannot now come here, and stultify themselves, avoid their deliberate and solemn act, by charging the plaintiff with notice. The omission was a release of the condition. Neither can they allege that the bonds are not valid because a portion of them were signed only by two actually in office, instead of all the commissioners. The duty enjoined by the act is to be performed by the commissioners, as the "constituted" authority of the county, and the signatures of two with the corporate seal, is sufficient without the assent or signature of the third.

4. It was no part of the duty of the grand jury to indicate whether the subscription was to be paid in bonds or money. It was simply to "advise and recommend" the subscriptions.

5. The several points submitted by the counsel for plaintiff and defendant are here substantially answered, and they are specially so in a memorandum attached to each.

Upon the whole facts and law of the case, if you believe the testimony, we have no hesitation in charging you that the plaintiff is entitled to your verdict; and we hope that for the honor and reputation of Crawford county, this is the last case of the kind we shall hear of in this court.

The jury then found for the plaintiff $2,-163.67, being the whole amount claimed; $1,848 was the principal, and $315.67 was the amount of interest.